PHILIP WARLICK, Respondent, *vs.* DANIEL PETERSON, Appellant.

1. *Evidence—Depositions—Certificate—Sufficiency of as to date of taking.*—The caption of depositions began as follows: "State of North Carolina, Burke county, March 12th, 1873. Pursuant to notice heretofore served, the following depositions of witnesses produced, sworn and examined on this 12th day of March, 1873," and concluded with these words, "Given at the Post Office in Morganton, in Burke county, North Carolina, on the 12th day of March, 1873." *Held*, that it sufficiently appeared thereby that the depositions were taken on the 12th day of March, 1873.

2. *Evidence—Depositions as to character—Admissibility—Impeachment of witnesses.*—In depositions offered to impeach the testimony of witnesses, the form of the question asked was, "Do you know A. B., if so, how long have you known him, and are you acquainted with his general character? If so, state what it is for truth and honesty?" The answers to the questions were full and explicit, and showed that the witnesses were testifying to the general character of A. B. at the place where he resided. The counsel of the opposing party was present and made no objection at the time to the questions or answers, but cross-examined the witnesses: *Held*, that the testimony was competent notwithstanding the informality of the questions; it would be too late to object at the trial on account of the form of the questions.

3. *Evidence—Settlement—Rebuttal—Letters*—In suit on a promissory note, defendant alleged settlement by the assignment to plaintiff of certain demands and also pleaded the bar of the statute of limitations. Plaintiff, in reply, set up a new promise, taking the case out of the statute. On the trial, defendant was sworn as a witness on his own behalf, and on cross-examination proved certain letters, written more than ten years prior to the institution of the suit, but after the alleged settlement, as having been written by himself. These letters were afterwards introduced by the plaintiff, to contradict defendant's testimony as to a settlement. *Held*, that the letters would not be competent to take the case out of the statute, but would be admissible to disprove the alleged settlement. If the witness had not been a party to the suit, the letters might not have been admissible to impeach his testimony, but as he was the defendant, the letters were admissible as his admissions.

4. *Limitations—Acknowledgment of debt—What sufficient*—In a suit on a promissory note, where the defendant relied upon the statute of limitations, a letter from defendant to plaintiff, which referred in clear terms to a note made by the debtor to the plaintiff, which remained unpaid, and promised to keep for the plaintiff all he could make over the amount necessary to support his family, was a sufficient acknowledgment to take the case out of the statute of limitations, if written within the time limited by the statute; provided it referred to the particular note in suit. Whether the promise referred to this note was a question of fact for the jury.

5. *Limitations—Acknowledgment—Sufficiency of, question for court.*—The sufficiency of an acknowledgment to remove the bar of the statute of limitations is a question to be passed upon by the court.

*Appeal from Madison Circuit Court.*

***B. B. Cahoon,*** for Appellant.

I. The certificate of the justice appended to the depositions sought to be suppressed, wholly fails to comply with the requirements of the statute in this: it fails to show and omits to set forth that the depositions were reduced to writing, etc., on the day, between the hours, and at the place set forth in the notice. This omission is fatal. (Wagn. Stat., 526, § 22; Thomas vs. Wheeler, 47 Mo. 364–5; Moss vs. Booth, 34 Mo. 317.)

II. The character of a witness may be impeached by general evidence of reputation. (State vs. White, 35 Mo., 500.) And in doing this a party is not restricted to inquiries into his character for truth; the inquiry may extend to his moral character generally, for "a bad moral character generally, or a depravity not necessarily allied to a want of truth, may yet to some extent, shake the credibility of a witness, and therefore is a fair subject of investigation." (State vs. Shields, 13 Mo., 238; Day vs. State, *Id.*, 425.) The truth to be elicited must of course relate only to the general reputation of the witness. (1 Green. Ev., § 55; Wills on Cir. Ev., § 131.) And any form of question which will bring this general reputation out, may be said to be proper.

In substance the questions asked of the impeaching witnesses, are precisely the same questions approved by this court in former cases. (State vs. Shields, 13 Mo. 137, 8; Day vs. State, 13 Mo., 425.) And the same mode or form of question prevails in North Carolina, where the depositions were taken. (State v. Boswell, 2 Dev. Law R., 209, 210; Hume vs. Scott, 3 A. K. Marsh., 261, 2.)

III. The admission of the letters dated January 21st, 1860, and February 18th, 1860, after the appellant's case was closed was error. Because, 1st, they tended to confuse the issues and mislead the jury; and 2nd. because, being written far beyond the period of ten years next before the bringing of this suit, they were erroneously, at the close of the case, permitted to go to the jury to affect, in their minds, the ques-

tion of limitations, and they were not properly admissible for that purpose even if offered at the opening of the case.

But these two letters were ostensibly introduced to contradict the testimony of the appellant, and for such purpose erroneously admitted, because no foundation was laid by asking the witness if he had ever written any of the statements contained in the two letters, telling him what was therein contained, or previously permitting him to read the letters, neither of which was done. (State vs. Starr, 38 Mo., 279; Lohart vs. Buchanan, 50 Mo., 202; Spaunhorst vs. Link, 46 Mo., 197; Angus vs. Smith, 1 Mood & Malk., 474; 2 Phil. Ev., § 959, Am. Ed., 1859; 1 Greenl. Ev., § 462; 2 Brod. & Bing, 300–313; 1 Mood & Malk., 433.)

IV. It was error on the part of the court below to give, on the part of the respondent, instructions one and two. (a.) They both commented upon the evidence. (Carroll vs. Paul, 16 Mo., 226; Fine vs. Public Schools, 30 Mo., 166; Anderson vs. Kincheloe, 30 Mo., 520; Fine vs. Public Schools, 39 Mo., 59; Rose vs. Spies, 44 Mo., 20.) (b.) They both assumed that the letter of January 8th, 1867, contained an acknowledgment, not only of a subsisting debt, but by express terms of the note sued on, which was not the case, for the note was not named or identified in or by the letter; and those instructions further assumed that that letter contained a promise to pay the debt within ten years before the suit.

By such assumptions, the instructions took from the jury the consideration and determination of such facts, as these which they alone had a right to find. (Turner vs. Toler, 34 Mo., 361; Thompson vs. Botts, 8 Mo., 710; Chouquette vs. Barada, 28 Mo., 491; Merrit vs. Given, 34 Mo., 98; Moffett vs. Conkling, 35 Mo., 453; Sawyer vs. Hann. & St. Joe. R. R. Co., 37 Mo., 240.)

(c.) They were, also, particularly the second which told the jury that the burden of proof to establish certain facts was upon the appellant, obnoxious, because they commented upon the weight and sufficiency of the evidence. (LaBeaume vs. Dodier, 1 Mo., 618; Glasgow vs. Copeland, 8 Mo., 268;

Schnerr vs. Lemp, 17 Mo., 142 ; Gilliam vs. Ball, 49 Mo., 249 ; State vs. Murphy, 52 Mo., 253.)

(*d.*) The suit was upon the note, and not upon the letter of January 8th, 1867, which did not give any valid cause of action. (Carr's Adm'r vs. Hurlbut's Adm'r, 41 Mo., 269 ; Leaper vs. Talton, 16 East., 423 ; Lea vs. Fouraker, 13 Barr, 1099 ; Sluby vs. Champlin, 4 Johns., 451 ; Shippy vs. Henderson, 14 Johns., 178 ; Baxter vs. Penniman, 8 Mass., 133 ; Low vs. Shaler, 3 Conn., 131.) And the letter was only evidence to be submitted to the jury for them to find if the promise or acknowledgment and its application to the debt evidenced by the note sued on was contained in the letter. (Bell vs. Morrison, 1 Pet., 362.) While it is true that if a deed, lease or similar document is introduced, its legal effect is a matter of law, and the court has a right to instruct the jury as to its proper construction and interpretation (Waddell vs. Williams, 50 Mo., 216 ; Willi vs. Dryden, 52 Mo., 322) ; this letter was not such a document thus to be construed, and it was the right of the jury, who are the exclusive judges of the weight and sufficiency of the evidence, to determine what it contained. (Harris vs. Woody, 9 Mo., 113 ; Callahan vs. Warne, 40 Mo., 131 ; McFarland vs. Bellows, 49 Mo., 311 ; Bowen vs. Lazalere, 44 Mo., 383 ; Deere vs. Plant, 42 Mo., 45 ; Claflin vs. Rosenburg, *Id.*, 439 ; Singleton vs. Pacific R. R. Co., 41 Mo., 465 ; Meyer vs. Pacific R. R. Co., 40 Mo., 451 ; McKown vs. Craig, 39 Mo., 156 ; Chambers vs. McGiveron, 33 Mo., 202.)

(*e.*) Moreover, that letter of January 8th, 1867 upon which the respondent relied, to take the note out of the bar of the statute of limitations, giving to it, for the respondent, the most liberal construction, was coupled and accompanied with conditions therein expressed, which repelled the presumption of an absolute promise to pay, unless the legislature increased the fees of the offices then held by appellant, and before the letter was for said purpose, in any event admissible, it was incumbent upon the respondent, to show that such conditions had been performed. (Bell vs.

Morrison, 1 Pet., 362; Carr's Adm'r vs. Hurlbut's Adm'r, 41 Mo., 268.)

V. The second instruction offered by the appellant and refused, told the jury that before rendering judgment on the note, they must find from the evidence that within ten years before the date of the institution of this suit, the defendant, in writing, expressly promised to pay the note, or acknowledged the same as an actual subsisting debt; that such an acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable for and willing to pay, and that if such acknowledgment that said debt was subsisting is accompanied with conditions or circumstances which repel or rebut the presumption of a promise or intention to pay, or if the expressions used be vague, equivocal or ambiguous, leading to no definite or certain conclusion, the jury cannot render judgment against the defendant on the note on the ground of such acknowledgment that said note, at the time the letter was written, was a subsisting debt; that such promise to pay the note must be proved in a clear and efficient manner, and be in its terms clear, unequivocal and determinate, and if any conditions are annexed to such promise, it is incumbent upon the plaintiff to show that they have been performed. This instruction was in the language of, and properly presented, the law, as to the question of limitation, and it should have been given. (Bell vs. Morrison, 1 Pet. 362; Carr's Adm'r vs. Hurlbut's Adm'r, 41 Mo., 268; Elliott vs. Leake, 5 Mo., 208; Angell on Lim., pp. 214, 215, § 211; pp. 217, 218, § 212.)

*Martin L. Clardy with F. M. Carter,* for Respondent.

I. The acknowledgment of defendant in his letter of January 8th, 1867, to plaintiff, of a subsisting indebtedness, is clear and unequivocal. Upon such acknowledgment, the law implies a promise to pay. (Elliott vs. Leake, 5 Mo., 208; Chambers vs. Rubey, 47 Mo., 99.)

II. The suit was properly brought upon the original contract, and upon the new promise. (Carr vs. Hurlbut, 41 Mo., 264.)

VORIES, Judge, delivered the opinion of the court.

This action was brought on the 14th day of May, 1872, to recover the amount due on a promissory note executed by the defendant, payable to the plaintiff, for the sum of one hundred and twenty-two dollars and fifty-nine cents. The note was dated February the 19th, 1856, and made payable one day after date.

The answer of the defendant averred that no cause of action had accrued on the note within ten years, and relied on the statute of limitations. The defendant by his answer also set up as a further defense to the note, that in the year 1859 he and the plaintiff had a settlement of all demands and liabilities existing between them, and that upon said settlement he assigned and transferred to plaintiff certain claims and demands which he then had and held against one Duckworth and others, which were accepted by plaintiff in full satisfaction of all debts and liabilities of defendant to plaintiff, including the note sued on.

The plaintiff, by his replication to the answer, set up a promise in writing, by the defendant, to pay the note sued on, made on the 8th day of January, 1867, which it was claimed took the case out of the statute of limitations. The replication also averred that the defendant, shortly after the execution of the note, secretly, and with intent to defraud his creditors, absconded from the State of North Carolina, where the note was executed and where he then resided, and had remained absent from said State ever since; and then denied all other allegations in the answer.

The case was tried Sept. 28, 1873, by a jury. The verdict was for the plaintiff, for the sum of $215.50, and judgment rendered thereon. Unsuccessful motions were made for a new trial and in arrest of judgment, and the case brought to this court by appeal.

There are several grounds relied on and urged in this court by the defendant for the reversal of the judgment. It is first insisted, that the Circuit Court erred in overruling the motion made by the defendant to suppress the depositions

filed by the plaintiff in the cause. The principal ground of objection to the depositions was, that they were not sufficiently certified by the officer taking the same. The defendant was notified by the plaintiff that depositions would be taken, etc., at the post office in the town of Morganton, in the county of Burke, and State of North Carolina, on Wednesday, the 12th day of March, 1873, between the hours of eight o'clock in the forenoon and six o'clock in the afternoon, etc. No objection is made to the form or service of the notice.

The caption to the depositions reads as follows : " State of North Carolina, Burke County, March 12th, 1873. Pursuant to notice heretofore served, the following depositions of witnesses produced, sworn and examined, on this 12th day of March, in the year of our Lord, one thousand eight hundred and seventy-three, between the hours of eight o'clock in the forenoon and six o'clock in the afternoon, at the post office, in the town of Morganton, county of Burke, and State of North Carolina, before me, William A. Ross, an acting justice of the peace," etc., and proceeding in the usual form.

At the conclusion of the depositions the justice certified that, in pursuance of the annexed commission and notice, came before him, at the post office at Morganton, in the county of Burke, State of North Carolina, between the hours of eight o'clock in the forenoon and six o'clock in the afternoon, (names of witnesses) of the same county, and State, " who were severally sworn to testify the whole truth of their knowledge touching the matter in controversy, between Philip Warlick, plaintiff, and Daniel Peterson, defendant; that they were examined and their examination reduced to writing, and subscribed by them, respectively, in my presence, at the time and place above mentioned, and that said depositions are now herewith returned. Given at the post office in Morganton, in the county of Burke, State of North Carolina, this 12th day of March, one thousand eight hundred and seventy-three."

It is objected that the certificate does not show that the depositions were taken on the 12th day of March, and is therefore bad. The caption to the depositions states, that the witnesses appeared on the 12th day of March, and were sworn and examined on said day, in pursuance of the notice. The certificate also states that the depositions were taken in pursuance of the notice attached, and in the conclusion of the certificate it is stated, " that the depositions are herewith returned, given at the post office in Morganton, in Burke county, North Carolina, on the 12th day of March, one thousand eight hundred and seventy-three." This we think, when all taken together, is a substantial compliance with the statute.

It is further objected, that there is no proper seal attached to the certificate of the officer who certifies to the official character of the justice before whom the depositions were taken. The officer certifies that the certificate is given under his hand, and the official seal of his office attached; and the clerk of the Circuit Court, in making out the transcript, copies the certificate and affixes a seal at the proper place, in the only way that it could be done, which is by placing a scrawl at the proper place, where the seal should be, placing within the scrawl the letters L. S., to indicate the place of the seal. This is the usual way of copying such certificates in bills of exceptions. It would be wholly impracticable to require the clerk to make an impression of the official seal of the officer on the record. We think the motion to suppress the depositions was properly overruled. (Thomas vs. Wheeler, 47 Mo., 363; Moss vs. Both, 34 Mo., 316; Dale vs. Wright, 57 Mo., 110.) There were other technical objections to the depositions, but the defects suggested are either not material or do not appear on the record.

It is next insisted, that the court erred in excluding the depositions of Thomas A. Dorsey, T. R. Caldwell and others; offered in evidence by the defendant. These depositions were offered to prove the general bad character of Alexander Duckworth and one Dailey, whose evidence had been intro-

duced by the plaintiff. The objections made to these depositions were general sweeping objections to the whole of the depositions, (four in number) on the ground that they were irrelevant and incompetent, and that the questions asked as to the character of the witnesses to be impeached, were irrelevant and incompetent, and laid no foundation for the impeachment of the witnesses.

The questions asked the witnesses were in substance, "Are you acquainted with Alexander Duckworth, if so, state how long you have known him; also, state if you are acquainted with his general character, and if you are acquainted with the same, state what it is for truth and honesty?" To this question the defendant answered, that he had been acquainted with Duckworth for sixty years, and was acquainted with his general character, and knew that his general character for truth and honesty was not good. Other similar questions were asked of other witnesses, in which they were asked if they knew the general character of said Duckworth, of Morganton, Burke County, North Carolina, etc. The answers to these questions were full and explicit, from which it appeared that they were testifying to the character of the witness in the community where he resided, in fact, the witness Caldwell expressly speaks of his character "in the community where he resided."

It is true that the questions did not in direct terms call for evidence of the character of the witness in the neighborhood or community where he resided, which is the usual and proper form in which such questions are asked; (1 Greenl. Ev., § 461) yet as the answers given to the questions plainly refer to the neighborhood where the witness resided, the evidence would be admissible, notwithstanding the informality of the question, and particularly where the attorney for the plaintiff was present, (as in this case) and cross-examined the witness, but made no objection to the questions and answers at the time. It would be too late to object on the trial. The objection in such case is more in the nature of an objection to the form than to the substance of the evidence. If the

objection was to the competency or relevancy of the question and the evidence elicited thereby, the objection of course might be made for the first time on the trial ; but where the adverse party is present at the taking of the depositions, and makes no objection to either the question or the answer, at the time, and the answer to the question, though the question may not be in proper form, develops relevant and proper evidence, it would not be promotive of the ends of justice to reject the evidence on the trial of the cause. We therefore think that the objection to these depositions was improperly sustained, at least, as to the deposition of Tod R. Caldwell, although there is irrelevant matter in the deposition on other subjects, that ought to be rejected.

It is next insisted that the court erred in permitting the plaintiff to read in evidence two letters written by the defendant to plaintiff, one in February, 1860, and the other in January, 1860. These letters were introduced in evidence after the plaintiff had closed his evidence in chief; and after the defendant had introduced evidence tending to prove the facts in that part of his answer in which he set up and alleged a settlement between himself and the plaintiff, in which he had transferred claims to plaintiff, which were accepted in full satisfaction of the note sued on. During the examination of the defendant as a witness in his own behalf, the plaintiff exhibited these letters to him, and proved by him that the letters were written by him and were in his handwriting.

After the defendant concluded his evidence in defense, the plaintiff offered these letters in rebuttal of the defense and evidence introduced on the part of the defendant. The letters tended to show that the defendant had admitted his indebtedness to plaintiff on the note sued on, long after the time at which he alleged and attempted to prove that it had been settled and discharged. The letters were objected to by the defendant, because the promises to pay the note contained therein were conditional promises, and were made more than ten years before the commencement of the suit, and because they tended to contradict the evidence of defendant given on

the trial, and to impeach him as a witness, when no foundation for his impeachment had been laid, by calling his attention to the letters and the facts therein stated, so that he could explain the same, etc. A great many other objections were made, which need not be noticed.

If these letters had been offered to prove a promise to pay the debt sued on within ten years, in order to take the case out of the bar of the statute of limitations, they would certainly not have been admissible for that purpose, as they were written more than ten years before the bringing of the suit; but it does not appear that they were offered or relied on for any such purpose. The plaintiff had offered and read, along with his other evidence in chief, a letter dated January 8th, 1867, which was relied on as a promise within ten years to defeat the statute of limitations, and it fully appears that this last letter was the only one relied on for that purpose. The other two letters objected to were offered in rebuttal of the defendant's other defense, which asserted that the note had been paid or discharged, as is set forth in the answer. They certainly tended to rebut that defense and were admissible for that purpose. The other objection to the letters was, that they tended to contradict the evidence given by the defendant, by showing that he had made different statements at other times, and that no foundation was laid for said impeachment.

It must be remembered that the defendant not only occupied the position of a witness in the case; but he was also a party. The evidence might not be admissible if it had been offered simply to impeach a witness; but they were offered as admissions of a party which tended to disprove and rebut a defense set up and relied on by him to defeat the plaintiff's action. The defense was an affirmative defense relied on by the defendants, and the plaintiffs certainly had a right to rebut this defense by the admissions of the defendant, without any reference to any impeachment of the defendant as a witness, and the letters were properly received for that purpose.

It is next insisted that two of the instructions given to the jury on the part of the plaintiff, were improperly given, and that the judgment ought to be reversed for that reason.

By the first of these instructions the jury are told, " That the acknowledgment of indebtedness contained in the letter of January 8, 1867, offered in evidence, is sufficient to prevent the bar of the statute of limitations, and if the jury find from the testimony in the case, that the defendant wrote and signed said letter on the said 8th day of January, 1867, containing the acknowledgment therein of defendant's indebtedness to the plaintiff, the jury will find for the plaintiff the amount of such indebtedness, as shown by the evidence; unless it further appears to the satisfaction of the jury, that the defendant has heretofore assigned or transferred, in payment and satisfaction of plaintiff's demand against him, certain claims, notes and demands, or has otherwise paid plaintiff's claim."

The second instruction is substantially like the first, except that the jury are further told by said instruction, that the burden of proving such payment and discharge rests upon the defendant, and defendant must show by the weight of evidence and to the satisfaction of the jury, that such payment has been made; and unless defendant has so shown, they must find for the plaintiff, and in determining on which side the testimony in reference to payment preponderates, they may take into consideration the reasonable probabilities of the truth or falsity of the evidence on either side.

The grounds of objection to these instructions are, first, that the letter read in evidence and referred to in the instructions did not contain a sufficient acknowledgment of the debt sued on, to take it out of the bar of the statute of limitations; and secondly, that the instructions assumed that the acknowledgment contained in the letter referred to the debt in controversy, when that fact should have been submitted to the jury. The letter in question referred in clear terms to a note of the defendant, which was due and unpaid, to the plaintiff, and also a note which was also executed by the defendant to a third per-

son, and upon which the plaintiff was the security of the defendant; and after speaking of the prospects of the defendant, and his chances for making money in the future, the letter proceeded to express the hope that he would be able to make something over a support for his family, in which event he would keep all he could for the plaintiff. This, we think, was a sufficient acknowledgment to relieve the case of the defense of the statute of limitations, provided it referred to the note sued on. There was nothing equivocal or uncertain as to the acknowledgment of an indebtedness, or of the defendant's willingness to pay. The only thing left uncertain was as to the time at which he would be able to pay.

The present case comes almost exactly within the principle recognized in the case of Carr's Adm'r vs. Hurlbut's Adm'r, (41 Mo., 264). Whether the acknowledgment or promise relied on is sufficient to take the case out of the operation of the statute, is a question for the court; but as to whether the promise or acknowledgment referred to the debt in controversy, is a question of fact for the jury. (See the case last referred to, and cases there cited.)

The instructions given in this case improperly assumed that the acknowledgment of indebtedness referred to the debt in controversy; that fact ought to have been left to the jury. The latter part of the second instruction is also in the nature of a comment on the law of evidence applicable to the case; but while the language of the instruction may be improper, the judgment would not be reversed on that account alone.

The instructions refused by the court on the part of the defendant, were properly refused, as they seemed to leave a question of law to be determined by the jury. As already stated, it was for the court to say whether the promise or acknowledgment was sufficient to avoid the bar of the statute of limitations.

It is lastly objected, that the verdict of the jury and judgment of the court are excessive; that more interest was calculated on the note than was justifiable under the law.

We see no error of this kind in the record. The court instructed the jury, at the request of the defendant, that they should exclude from their verdict all interest which might have accrued on the note in controversy, during the continuance of war between the government of the United States and of the Confederate States. By an examination of the amount of the verdict, it will be found that the jury calculated no interest for the entire time included between the commencement and final conclusion of the war, and that the jury strictly followed the direction of the court on this subject. There is certainly no just ground of complaint in this particular, on the part of the defendant.

For the reason that the court improperly excluded the depositions offered in evidence by the defendant, and improperly instructed the jury as before indicated, the judgment must be reversed, and the cause remanded; the other judges concur.